Argued and submitted April 11, 1988, affirmed January 25, 1989

LOWERY et al,
*Respondents,*

*v.*

EVONUK,
*Appellant.*

ESTATE OF EUGENE EVONUK and
ESTATE OF MARY EVONUK,
*Respondents.*

(16-85-04890; CA A41581)

767 P2d 489

George W. Kelly, Eugene, argued the cause and filed the briefs for appellant.

Warren John West, Bend, argued the cause and filed the brief for respondents Lowery and Lay.

Edward C. Harms, Jr., Springfield, argued the cause for respondent Estate of Eugene Evonuk. With him on the brief was Harms, Harold, Leahy & Pace, Springfield.

No appearance for respondent Estate of Mary Evonuk.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Norman R. Evonuk (defendant), as successor trustee of a testamentary trust, appeals a judgment for plaintiffs in their action for an accounting and termination and distribution of the trust. He assigns as errors that the court found that he had breached his duty as trustee, that it denied trustee fees to him and that it awarded attorney fees to plaintiffs. We review *de novo,* ORS 19.125(3), and affirm.

In April, 1977, Peter Evonuk died; he devised one-half of his estate to his wife, Mary, and the residue in trust. The will named Peter's son, Walter, as trustee, and defendant, another son, as successor trustee. It directed the trustee to apply the trust income for Mary's benefit during her lifetime and, on her death, to divide the trust estate among the six children, Walter, Norman, Susan, Eugene and plaintiffs Julia and Margaret, with right of representation. Walter became trustee, but he died in 1980, leaving ten children surviving. Defendant then became trustee.

Mary died on April 21, 1983. Eugene died later. At the time of Mary's death, the trust owned bank accounts, an interest in real property (the "Home Place") and an interest in commercial real property (the "Kendall Ford property"), subject to a lease with a remaining term of approximately 43 years. A codicil to Peter's will required the trustee to distribute two acres of the Home Place to plaintiff Julia. In October, 1984, defendant, as trustee, obtained the county's approval to partition the Home Place, and in April, 1985, he deeded the two-acre parcel to Julia. In November, 1984, with the consent of all of the trust's beneficiaries, he sold the trust's remaining interest in the Home Place to himself. Thereafter, he distributed the money from the sale and in the bank accounts to the beneficiaries.

Defendant attempted to create a second trust to hold and administer the interest in the Kendall Ford property for the benefit of the beneficiaries of the original trust. In January, 1985, he sent a proposed agreement for the second trust to the beneficiaries. Some of them refused to approve it, and defendant abandoned the plan.

Plaintiffs then filed this action. They alleged that defendant had violated his duty to distribute the trust assets

on Mary's death, had improperly spent money and incurred obligations on behalf of the trust for which he should be surcharged and had not made accountings of monies received and expended. They asked that the court order defendant to terminate and distribute the trust and to account. The court ruled that the interests of the beneficiaries had vested on Mary's death. It ordered defendant to convey the interest in the Kendall Ford property to Peter's four surviving children, the estate of Eugene Evonuk and Walter's ten surviving children and to make a final accounting. Defendant did not appeal that order. In March, 1986, the court found that,

> "in violation of the law and of his duties as such Trustee, [defendant] failed and refused to terminate the Trust as he was required to do * * *."

It also ordered that defendant be paid trustee fees of $8,767.44 for the period April, 1980, to February, 1985, awarded attorney fees to plaintiffs, payable from the trust estate, and surcharged defendant's trustee fees so that, in fact, he received no fees.

■    Defendant assigns as error that the court found that he had breached his duties as trustee. He does not dispute the court's holding that the trust terminated on the date of Mary's death, April 21, 1983.[1] He argues, however, that he did not violate his duty to distribute the trust property, because paragraph VI-I of the trust states that the trustee has the power

> "[u]pon any division or partial or final distribution of the trust estate, to partition, allot and distribute the trust estate in undivided interests or in kind at valuations determined by the trustee, or partly in kind and partly in cash, and to sell such property as the trustee may in its sole discretion deem necessary, suitable, convenient or expedient to make division or distribution."

Although that paragraph gives the trustee discretion to decide whether to distribute the trust in cash or in kind, or both, it does not extend the time for distribution. His duty was to

---

[1] Paragraph V-B of Peter's will supports the court's conclusion:

"Upon the death of my said wife, the trustee shall divide the then remaining trust estate among my then surviving children, with a share by right of representation for the then surviving issue of any deceased child of mine, in accordance with and pursuant to the terms of division and distribution as enumerated in the preceding Article IV."

distribute and wind up the trust after termination within the time reasonably required under all the circumstances. *Restatement (Second) Trusts* § 345, *comment e*, § 344, *comment a.*

■■■■ We agree with the trial court that a reasonable period of time had expired by February 1, 1985. Over 21 months had elapsed since Mary's death. Defendant argues that the court should have afforded him a longer period of time to distribute and wind up the trust, because of the difficulty in selling the interest in the Kendall Ford property. Most of his efforts to sell the Kendall Ford property occurred after this action was filed, and all of his efforts were ineffectual. He failed to keep the beneficiaries fully informed of his efforts to sell. He did not seriously consider distributing the property in kind. The record shows that he felt no urgency to wind up the trust. His conduct displayed a lack of diligence. Accordingly, the court did not err when it found that he had breached his duties as trustee.

■ Defendant also assigns as error that the court awarded attorney fees to plaintiffs. It found that

"the litigation commenced herein by the Plaintiffs was necessary to force [defendant] to fulfill his duties as [trustee] * * * [and] has been of benefit to all of the beneficiaries of the said Trust and the Plaintiffs are entitled to recover their costs and disbursements and attorney fees."

He argues that plaintiffs' action did not preserve or increase the common fund, citing *Hatcher v. U.S. Nat'l Bank,* 56 Or App 643, 643 P2d 359, *rev den* 293 Or 373 (1982). In *Hatcher,* however, the plaintiff did not seek to benefit any other beneficiary and sought damages only for her own loss. Here, plaintiffs' action benefitted all of the trust's beneficiaries. Accordingly, the trial court did not err in awarding them attorney fees.

■ Defendant asked for $10,824 in trustee fees. He received none and assigns as error that he was "denied his trustee fees." He challenges these parts of findings 6, 7, 8, 12 and 13:

"6. That * * * a portion of the payments were wrongfully paid out of the assets of said Trust, either as unjustified expenses or incurred after [defendant] was obligated by law and the terms of the Trust to close the Trust, and as such are

personal obligations of [defendant] for which he must reimburse the Trust * * *.

"7. Based on the foregoing, [defendant] is indebted and obligated to pay the Peter Evonuk Estate the sum of $2,326.87.

"8. [Defendant] * * * has requested as Trustee's fees herein the sum of $10,824.00 for the years 1980 through 1986. The court finds [defendant] is entitled to Trustee's fees from April, 1980, until February, 1985, and no fee for any time thereafter. Therefore, the court finds [defendant] is entitled to Trustee's fees in the sum of $8,767.44.

"12. The fees allowed [defendant] in the sum of $8,767.44 are surcharged in the sum of $2,326.87 for the sums he is indebted to the Trust pursuant to paragraph 7 of these findings.

"13. The court finds that [defendant] * * * has necessitated this litigation, has created charges against the Trust Estate for attorney fees, costs and other expenses far in excess of the balance of Trustee fees in the amount of $6,440.57. Therefore, said Trustee fees are charged in the sum of $6,440.57, leaving nothing due from the Trust Estate to [defendant]."

Defendant argues that his breach, if any, was not "intentional" or "serious" and that the court's discretion to deny trustee fees is limited to those circumstances. In *Strickland v. Arnold Thomas Seed Co.,* 277 Or 165, 182, 560 P2d 597 (1977), the court ruled that it is within a court's discretion whether to deny compensation to a trustee who breaches his duties. The opinion acknowledges that previous opinions had denied compensation "only when the breach has been serious" but stated that "our cases do not recognize any limitation on the kinds of breach of trust which can result in the denial of compensation." 277 Or at 182. Moreover, in *Cloud v. U.S. National Bank,* 280 Or 83, 570 P2d 350 (1977), the court stated:

"Whether or not compensation is denied is wholly within the discretion of the court. Restatement of Trusts (Second) § 243. Factors to be considered in the exercise of that discretion include whether the breach was intentional, negligent or without fault; whether the breach relates to part or all of the trust; and whether the trustee's services have been of value to the trust. Restatement, *supra,* comment c." 280 Or at 93.

Defendant's conduct was not "without fault." We agree with the court that he was not entitled to trustee fees after January, 1985.

Defendant also challenges findings 7, 12 and 13, but he makes no argument that the surcharges are inappropriate, other than that he did not breach his duties or, if he did, that his breach was not intentional or serious. The court did not err.

Affirmed.